Case number 17-1102 at L. Puglia-Inversiones de Puerto Rico, Inc. DBA, El Bracero de Puerto Rico, Petitioner v. National Labor Relations Court. Mr. Bayles, Montesquieu, Petitioner. Ms. Isbel, Respondent. Thank you, Mr. President. Good morning, Your Honors. Good morning. May it please the Court. My name is Attorney Alberto Bayles, on behalf of the Petitioner, Puglia-Inversiones, Inc. Your Honors, the main issue in this case is whether there was substantial evidence on the record to find that Puglia-Inversiones was a successor employer by a higher majority of the workforce of Caribbean International News, and if also there was substantial evidence to find that there was enterprise between CIN and Puglia-Inversiones. Is your primary argument based on the addition of the inserters? Correct, Your Honor. On that point, our main – recently there was a board decision in PC Structurals, Inc., which is tied into that main issue, and it's whether or not, you know, the employers on the PC Structurals, Inc. has to show that there is an overwhelming community of interest between employees who want to be included in that bargaining unit and the unit employees. Since part of our contention is that the unit was no longer appropriate. Ah, this is the key to your case, is it? The key to your case is that the addition of inserters makes the prior existing unit inappropriate. Correct. And do you realize what a tough burden you have to establish that a unit is – quickly or some – surely or – Truly. Truly, that's right. Truly inappropriate. Is that your view? Yes, Your Honor, but as I said – Do you recognize, of course, that the statute allows the board to pick an appropriate unit, not the appropriate unit? Yes, Your Honor, but on the PC Structurals, it goes to that. It also emphasizes the importance in making unit determinations, whether or not they are appropriate under the Act. So, in other words, your case depends on the determination that the unit is no longer truly appropriate. Correct, Your Honor. So that's exactly the same standard that would apply if there was a new proceeding before your company and a union wanted the representation of all but the inserters on the grounds the inserters were not covered by the same medical plan and they were part-timers. Yes, Your Honor. And it's your assertion that under those circumstances, as a matter of law, such a unit would be truly inappropriate. Correct, Your Honor. Inserters in this case, based on the evidence on the record, it's important to note that prior to the acquisition of the newspaper, the inserters were not directly employed by CIN. They were hired through a third party. We know all about that. So the standard where you should apply is exactly the same standard that would apply if this was a new case, there wasn't a successorship, and the union sought a unit excluding the inserters. And the question is what would be under our law, most importantly, Blue Man Vegas opinion, would that be truly inappropriate? Yes, Your Honor. That is a very tough burden because the board might argue in that case the inserters should be excluded because they're part-timers and they're not covered under medical plan. And do you have any cases that would stand for the proposition? I believe that in the reply, Your Honor, with regards to the particular issue of whether their classification as being part-timers should not be taken into account in determining whether or not the unit is appropriate. Yes, that case is where the board included part-timers, not whether they excluded them. Yes, but it's their status in order to make that determination. There's no flat law on that. They could be included. They could be excluded. The only grounds on which you have to establish is that that unit would be truly inappropriate. I find it very hard to grasp that position given the law. Well, yes, Your Honor, but as I said, recently the board in Volkswagen, the counsel for the board in the case of Volkswagen Group, they asked this court to reverse the case, remand the case back to the board pursuant to the PC structural standing, reverting the traditional community of interest standard. Although in that case it does not involve an issue of successorship, it did argue that it was important because they were arguing that. What was the holding in PC? And PC structural, the holding was that the unit was no longer appropriate because of the differences in standards. No longer appropriate? What happened? The court did not emphasize on whether or not. Which court? Our court? No, the board. The board, sorry. Excuse me, Your Honor. The board did not emphasize whether or not, as you mentioned, the unit has to be the most appropriate unit. It did emphasize a lot that it's important just to take into account the interest of all parties, included and excluded, because both parties have many employees within the unit, and those that are excluded also have rights under Section 7, and it's important to avoid having micro-units or units that are arbitrary. Was this an initial case, an initial representation case? Yes, I believe so, Your Honor. Not a successorship. But I believe that the rights are also, in cases of successorship, should also be taken into account, particularly more since the evidence on the record shows that inserters, in this case, are part of an integrated operation. You have the press employees, then you have the inserters who are right in the middle of the production phase, and then you have the dispatch employees. And just to conclude that inserters, based on the evidence that's on the record, should be separate or form a separate unit, I think is not supported by the evidence on the record, mostly because they have a lot of interests in common. And going back to piece of structural, the Court there said that in making unit determinations, it has to be a case-by-case analysis, and you have to determine whether or not the differences in interest outweighs the interests that they do have in common. And I believe here that the interests that they have in common are greater than the interests that are different. If not, you know, it's also piece of structural, emphasizes that in the majority rule cases also, and the Board's responsibility under Section 9 of the Act to make unit determinations. So I strongly believe, Your Honor, that in this case, it's very crucial that whether the Court will apply or not piece of structural or the alternative, remand the case so that the Board can revisit its decision and analyze it under the new standard for the community of interest, which, as I mentioned, I don't know if I mentioned, but if you take a look at the ALJ's decision specifically, the ALJ makes the determination that there wasn't a community of interest. It doesn't say whether or not there was an overwhelming, but it says that there were no compelling reasons to determine that the unit was no longer appropriate. And also the findings that it made, it also looks like the analysis was somewhat incomplete in terms of whether or not there was a community of interest. What's the piece of structural case that you're talking about? Yeah, Your Honor, the decision is not on the briefs because the decision came in December and the briefs were already... And did you send us a letter about it or anything? I was a little worried I was losing it here for a minute. Oh, sorry, Your Honor, excuse me. We didn't supplement the citations. So it's not in the briefs and it's not a supplement? No, Your Honor. Okay. The citation is the case is 365 and RRB 160. It's a little bit late for us to be looking at an LRB case at this point. Okay. So the other members of the unit are pressmen, reporters, radio operators, like that, right? Yes, Your Honor. And what the inserters do is they take a piece of paper and stick it in the middle of another piece of paper. Is that right? Yeah, well, they also help with preparing the packages and sending them to the dispatch employees, who are also the unit employees. And they're paid considerably less than the rest. Well, yes, Your Honor, but if you take a look at the wages of the unit employees themselves, there is also a wide gap between them. You have unit employees who earn $11, and also you have others who earn $24. So the gap is wider between the unit employees than it is. What are the inserters paid? $7.25. So what was that? $7.25. So at least $5 less than the lowest. But within the same unit, you have employees that... That's true, and they're only part-time. They're only part-time. You also have some of them that work, I think, have regular work schedules, but most of the time they also work overtime. So it depends on the level of production. And also they have a similar work schedule to that of the dispatchers, which is from 9 p.m. to 5 a.m. There's a dispute about whether they communicate with each other. Is that right? There is. With regards to the communication, I know that the board gave substantial weight to the testimony given by one of the witnesses by the name of Mendez. Who the board regarded as credible. Yes, Your Honor. So to go the other way, we'd have to conclude that the board was wrong in regarding this witness as credible. I know it's a matter of credibility determinations. I know because also on the other hand, you have the testimony given by the Paul Inversiones witness, Eligio Deconin, who is the director of operations. Just to be clear, we'd have to overturn their factual determination with respect to communications. As to that point, yes. Going back to whether or not the analysis of the interests as they shared, it is important to point out that the parties stipulated in the case that inserters as well as the bargaining unit employees have the same terms and conditions of employment, similar compensation and benefits, that they also are subject to the same human resources department. So there are facts that were stipulated. That's on Joint Appendix 23. What about health care? In terms of health care, they're not entitled to the medical plan. But that's basically the only difference in terms of benefits. In all aspects, they are the same. So any other questions? No questions. Thank you, Your Honor. May it please the Court. Kelly Isbell here on behalf of the National Labor Relations Board. I have with me at council table Mr. Miguel Simonet, who is the counsel for the union. There's a presumption that historical bargaining units, they're presumptively appropriate. And to overcome that presumption, the company has to show that the historical bargaining unit is repugnant to board policy, that it no longer corresponds to normal standards of appropriateness, or that there are compelling circumstances to overcome. You know what's interesting about this case? I can't find any board case or court case that has really grappled with the question of whether or not the unit, the additional employees, which under Fall, River, and Burns, would be normally what you would look at to determine whether there's a continuity, a successorship, whether that is different when you're talking about people outside of an existing or succeeding appropriate bargaining unit. So your brief doesn't talk about, doesn't say, look, if the unit continues to be appropriate, just as it would be appropriate in an initial proceeding, because inserters are excluded, that's adequate. You understand what I'm saying? The board has not put that together clearly. You mean in terms of the new employees in the unit in substantial continuity? Yes. In other words, the board doesn't say explicitly that if the new company comes in and adds a number of employees which do not destroy the appropriateness of the existing bargaining unit and there's still a majority in the existing bargaining unit, then there is successorship. Right. The board hasn't really put that together. I agree. I have not found any cases that are similar to this. What we have are cases where there are non-represented and represented employees that are merged because of a buyout, and that would be the non-case. But do you think we're right in concluding that the question, and counsel seems to concede this, that the issue is really whether the existing unit without the inserters is an appropriate unit. Yes, Your Honor. And if it is an appropriate unit, then there is a successorship. Yes, Your Honor. And that would be true even if the unit, theoretically, was a very small group of, say, technical types. And there was no addition to the employees to that unit. In other words, our union represented, say, 100 people out of 1,000. And the 100 people were special technicians. And you have a new company comes in, and it takes on the same 1,000 employees, but 100 of them are represented as a technical group. That would be a successorship, wouldn't it? Yes, Your Honor. And I think that's similar to this court's decision in community hospitals where the hospital changed from a public to private, and the only unit left was one unit of nurses. So why doesn't your brief specifically say the only issue here is whether the existing unit without the inserters is an appropriate unit? If it is an appropriate unit, there is successorship. I thought I did, but perhaps I did not say it very clearly. I will go back and tell my supervisor that I failed you. Bring the supervisor in. Why don't you? Many years ago, I argued cases for the NLRB, but I ignored supervisors. I will also tell them that when I get back. In my applicable principles section, we do talk about the fact that the board only has to approve an appropriate unit, not the most appropriate unit. And certainly here, the historical bargaining unit is an appropriate unit. There is nothing that makes it inappropriate, certainly nothing that makes it repugnant. Truly inappropriate, as we said in Blue Man Vegas. Exactly. I mean, I think we've dealt with PCC Structurals, but that was a new case, and it's a specialty health care case. None of us have any idea what you guys are talking about. We don't have any idea because this is new. Specialty health care was the board's, it's often called the micro-unit decision, which was overturned by the new board, and it has no implication for historical bargaining. Do you have a new board? We do, Your Honor, after President Trump. Can you, I'm having a little trouble following the back and forth between you and Judge Silverman, just so I understand the underlying basics. As long as the board, the unit that the board certifies is an appropriate unit, we have to uphold it. Correct one, right? Yes. And that's true in a successorship as well. As long as the historical unit is an appropriate unit, then it counts for successorship. Yes. Now, there's also a presumption that the historical unit is an appropriate unit. Correct, Your Honor. Does that apply here, or is there some difference between, maybe it's a little hard for me to guess, the difference between an appropriate unit and a presumption of an appropriate unit? Do you think there is a presumption? You certainly said in your briefs, and I certainly thought, there would be a presumption that the historical unit would be an appropriate unit. When the board is dealing with a successorship situation, it does not look at the unit in the same way it would in an initial bargaining situation. Yeah, that's the thing that mystified me, because why wouldn't it? Why in God's name wouldn't it? Because it seems to me it's exactly the same issue. You made that point in your brief. That's why I was going through this dialogue, because it doesn't make any sense. Well, I think as this Court pointed out, and I believe it was trying at Seafoods, historical bargaining units are often less than ideal. Not inappropriate, but less than ideal, and something the board might not in an initial bargaining situation have necessarily approved. But in the historical bargaining unit situation, the unit must be appropriate. I'm not saying that the unit is inappropriate. Are you saying there's a tougher standard of appropriateness in a successorship case than it would be in an initial proceeding? I'm saying it's easier for the union in a successorship case. Because they've been operating together for a long time, the employees. The underlying question is what would the employees think was an appropriate unit? Yes. And they've been operating that way for a long time historically. That's different than a circumstance where you have a brand-new company, for example, new employees, new units. Exactly. But it's a fortiori, because if this was clearly an appropriate unit initially, then it's clearly an appropriate unit in a successorship. I would also agree with that. So we don't necessarily have to decide the presumption question as long as we think it's an appropriate unit. Am I getting the Venn diagrams correctly? Yes, I think you are, Your Honor. Okay. I knew he would love the Venn diagrams. Okay, further questions? Thank you, Your Honor.  We'll give you another minute. Thank you, Your Honor. Your Honor, two points. With regards to the presumption that was just being discussed, it's a rebuttable presumption as to whether the unit is appropriate. And it is important in making that analysis on the Fall River whether or not you have to take a look at the composition of the workforce in successorship cases. And in this case, there is a change in the workforce that is directly affected. Fall River didn't deal with the question of the separate category of employees like in service. It assumed that it was talking about one unit. And it set forth the principle of law that if in the one unit that we're talking about, there's an enormous expansion of employees, then the successorship doctrine wouldn't apply. That isn't this case. Well, Your Honor, I believe that based on the changes that were implemented. Sorry? Based on the changes that were implemented. Oh, now you're going to the operational changes. I'm not going to try to comment on that, but I would like to say just to try, since I don't have much time, that the counsel just mentioned Trident. So that case involves a successorship case. But also in that case, it should be noted that in that case, at least one of the units was determined not to be appropriate because it excluded employees from the bargaining unit itself. So that's also related to this case. So I understand that you have to take a look at the community of interest as the court did in Trident. So it's a similar case in that aspect. We only deal here with one unit. But I believe that the court should take a look at the change in determining whether or not there's a community of interest. That just stands for the proposition that sometimes the board wins and sometimes the board loses. That's all you're saying, right? Correct. It's not always the case that whatever unit the board picks is always right. That's the point of Trident. Sometimes you get the bear and sometimes the bear gets you. That's right, Your Honor. I'm not sure that's what I meant. Okay. That's called the bear doctrine. Yeah. All right. Further questions?  All right. Thank you. Thank you, Your Honor. Case under submission.
judges: Garland, Silberman, Sentelle